Good morning, your honors, and may it please the court. I'm Mark Johnson from the California Attorney General's Office, appearing on behalf of the appellant in this matter. As you're aware, the district court in this case granted a writ of habeas corpus on the grounds of ineffective assistance of counsel employing a de novo review standard that did not subject the case to the mandates dictated by the ADPA and particularly under Harrington v. Ricker and Cullen v. Penholster. That de novo review standard employed by the district court is the state's primary concern with this case and we believe that that was wrong for numerous reasons. And before you pepper me with questions, there's one point I would like to make just very briefly. I've read the petition at issue, the Superior Court petition in front of the California Superior Court, the initial one that's at the forefront of all of this mess. And I would just welcome you, honors, to review that petition carefully as I have because both parties agree in this matter that yes, there was six overall claims raised in that petition. But that doesn't really account for the substance of the petition as a whole. It really is a number of the same claims being rehashed under the auspices of different alleged constitutional violations or state court violations and what have you. And on top of that, a number of outlying claims. And so for the district court to say, well, that the Superior Court did not reach the merits of this, when you look at the petition, actually it did and it makes very perfect sense. The district court said that the state Superior Court decision was not pollusive, which I understand to be not clear. I think it's very clear, but if there's any unclarity, our reading of the petition itself shows that it is kind of clear. So are you relying on Johnson v. Williams for the presumption or are you also relying on something expressed in the decision? Yes and yes, to answer your question. First of all, obviously the district court did not have the advantage of the Johnson v. Williams opinion when it issued the writ in this case. And my first argument, I don't want to spend too much of my time on this, is to look at the petition and look at the order. It does make sense. Well, give us some specific references in the petition or the order, I guess. The order? Well, the order is pretty quick and to the point and doesn't make specific reference to any of these multifarious claims. To do so would have been, or to require the judge in this case to do so, would place an unbelievable burden on, as the Johnson court put it, already heavily burdened California Supreme Court. So the order is only 15 lines long. That's correct. And the petition is close to 100 pages. And so what you're relying on is language in the petition primarily? Yes. Well, no, that's actually just a very small part of my argument. If you read the petition juxtaposed with the order, it does make sense. And it's not, as the district court put it, very obvious that the superior court did not reach the merits of any of these claims. There's all kinds of claims throughout the petition that were not referenced. I'm trying to understand your argument. I'm looking at line 16 to 19. Do you have the order? I know the order. All right. The first full paragraph, well, as to the grounds for relief, challenging the evidence and presentation, the evidence has already been reviewed and found sufficient in the decision of the court of appeal. Is that enough? I'm not sure I understand your question. Is that enough for what? To establish that the state court had decided the federal issue. Isn't that where we are right now? Yeah, well, the issues raised in that habeas petition, which are all over the map, which include illegal sentence, all manner of stuff. And that's what I would exhaust all of my time if I went through line by line. You're not helping yourself right now by not being a little bit more clear. And that's why I didn't want to spend too much time on this. But you still have to address this. So the question is, was the district court's reading of the order a fair reading under Johnson now? No. I mean, for me. Okay. Why not? Why not? Because at worst, at worst, the order was unclear as to whether the district court specifically reached the basis upon which the district court ultimately granted habeas relief, implying de novo review. And there's, starting with Johnson, but going back for decades now, it's clear that state courts are presumed to know and follow the law, especially their own law. And Johnson itself points out, interestingly enough, particularly in the, I'm sorry, Your Honor. Well, but it looks like the petition raised six issues in his petition. Two of these were explicitly addressed in this little order that the court signed, the short order that the court signed, the discriminatory jury selection and tainting the jury. Two appear to fit within the court's description of claims challenging the evidence, conflicting the verdict and sufficiency of the evidence and actual innocence. And a fifth appears to fall into the challenging the presentation of evidence category, prosecutorial misconduct. But the district court concluded that the state court also addressed Mr. Bout's IAC claim as a challenge to the presentation of the evidence, and if they did, they were wrong. How — I'm just trying to understand your theory, because that seems to make some sense. That seems to be a fair reading. And I'm trying to understand what your theory is, even under Johnson, as to why this deserves etha review instead of de novo review. Two questions. And first, I don't want to beat the dead horse, but if you look at the petition, it does make perfect sense. But secondly — Because why — looking at the petition, how does that help make more sense? Because these claims are basically the same sort of complaints spread throughout the entire petition in regards to all manner of complaints. And so presentation of the evidence, evidence submitted, most of this stuff has to do with misconduct by our office, by the appellate court on appeal. And it fits smoothly under the rubric of the language. But with that said, and even the district court acknowledges this, is at best, or at worst, the language of the order is ambiguous or not pollusive — pollusive in the words of the district court. And there's a long line of authority. If that's the case, if it's not clear, then the tie goes to the state courts who are presumed to follow the law, and particularly this law and this finding by the district court. To accept the district court's finding here, you'd have to accept that the superior court and all levels of the California courts were not smart enough to realize the one thing that the district court got, that they didn't understand their own very, very well-settled law. Going back for over 35 years, I believe that the first case was People v. Polk. It predates my tenure as a lawyer by easily 15 years. And so — Kagan. Do you need it? Let's just, I guess, move on to — how about under DeNovo review? What happens under DeNovo review? Pardon? What happens under DeNovo? Do you need EDCA review in this case? No. Why not? We don't, because even employing DeNovo review, the district court got this wrong under the standard enunciated, very familiar standard in Strickland v. Washington. The evidence, and let me quickly reiterate, this evidence, if it is evidence, that was presented to the California courts at all, consisted of approximately three pages in this close to 100-page brief. But be that as it may, these allegations that the witness in this case had emotional, mental problems, what they might be or maybe not be, firstly, in terms of DeNovo review, assuming that was correct, and I don't concede that for — I really want to get back to my Iles point, because I think that's the most powerful one I have to make, but I'll quickly address this. This is not your typical he said, she said case. The facts here were pretty much undisputed. There was sex here. The only — and the defendant's claim was it was silently consensual sex. And so the only real issue here was whether the defendant reasonably believed that. And these other allegations, assuming they could be proven true, first, I probably wouldn't have been admissible in court to begin with. Most of them are remote, speculative. We don't even know that they really occurred, for the most part. But assuming — I really want to get to my Iles point. Can I just ask you about the standard of review? Is there any reason to believe that the superior court just — that they didn't just overlook this? No, Your Honor. Why? What is there to believe that the superior court even thought about this IAC claim? Well, I'll go back to a long line of Supreme Court precedent that says that State courts are assumed to be — No, but you can rebut the presumption of — that they knew the law and knew the merits if there's something there. And isn't there — isn't there an argument there in this case that that's the case? I mean, the Supreme Court just — the superior court just said nothing about it. And that's what the Johnson v. William court dealt with in precisely — But they said something about the other claims. And I think 39 pages of the petition was about IAC. So not about these claims, Your Honor. And let me — for the most part, this IAC claim was based on ineffective assistance of appellate counsel, based on ineffective assistance of trial counsel. We're not raising all these other issues that had nothing to do with the basis of IAC. But the superior court said nothing about IAC in any way. And nor did it have to under the Johnson case. And Johnson explicitly stated as much when it said that, you know, courts, in this context, California courts, can — don't need to address every jot and tittle of every claim to be presumed that they did address them on the merits. And that's what this order did. But assuming for the sake of argument that the district court was correct, that the superior court just flat got it wrong, didn't either overlook the claims, didn't understand state law, whatever, that cannot be imputed under the ILLS doctrine to the state appellate court and state supreme court who deal with these situations all the time, who have original habeas jurisdiction, presume to read the petition, know what the allegations are, and know that what the district court said that the superior court allegedly did was not proper under California law and would not have followed that. I'm going to — Well, can you point to any relevant authority concerning an order that is similar to the superior court's order, which is basically an order that's very clear as to all or seems to be clear as to all but one of the claims at issue that the court did address them but where there was uncertainty as to whether or not some other language seems kind of fuzzy actually addressed the last of the claims? Yes, I can point to two cases. What's that? Before I run out of time. Johnson, for one, dealt with this. If it's not clear. But Johnson doesn't deal with this. And this Court's opinion in I think it's Running Eagle versus Ryan, it is Running Eagle, where if it's ambiguous whether the court denied a claim on procedural grounds or on the merits, it must be presumed that the court did so on the merits. I'm running out of time very quickly here. If there's no further questions, I'd like to reserve the short amount of time I have left. You have 20 seconds, counsel. That's not much. Thank you. You may reserve it. We'll hear from the appellee. May it please the Court and good morning. I am Dennis Cusick. On behalf of Mr. Boutte, it's Cajun French, hence the pronunciation. Boutte. Boutte. Thank you, counsel. First of all, I don't want anyone in this Court to lose sight of the fact that Mr. Boutte, according to Judge Kaczynski, did everything right. He mentioned to his attorney at trial strenuously that you need to investigate my complaining witness's background. According to Judge Kaczynski, the attorney sat on his hands. Stronger than that, he refused to investigate. What's a case like that? A case like that is Terry Williams v. Taylor, where the U.S. Supreme Court said the failure to investigate and present evidence is ineffective assistance of counsel. Now, there's been reference here to the Johnson v. Williams case. Johnson v. Williams is a case in which the state court expressed an opinion, stated an opinion on a Sixth Amendment issue and made that opinion based on state law. However, they went on to cite nine certain cases. They went on to cite state law or, excuse me, federal precedent. And as a result of that, the conclusion was, yes, they did reach the federal issues, in spite of the fact that primarily the jury issue was decided on state law grounds, that they had also reached the federal grounds. There is no such presumption here. As Judge O'Scanlan pointed out, that paragraph beginning at line 16 is the critical paragraph in this 192-word opinion. And as Judge Murvea pointed out, you can divide these three center paragraphs of this opinion into deciding all six issues of that Mr. Boutte raised in his pro se petition. That first sentence referring to the evidence and presentation of evidence logically refers to two claims, as Judge Kaczynski pointed out. It refers both to what Williams v. Taylor says, the investigation and presentation of evidence at trial under ineffective assistance of counsel, and what I would refer to as the prosecution for prosecutorial misconduct in not correcting the false testimony of a witness. Now, the Attorney General's Office concedes that five of the six claims were addressed in that order. Now, conveniently for them, they say ineffective assistance was not. But one of those five is that NAPU claim. And if they are right that the NAPU claim was addressed, that's the one about presentation of evidence. And NAPU, to prove out a NAPU claim requires extra record evidence. So if it's necessary to prove out a NAPU claim, which they concede, then it's also necessary to prove out an IAC claim. So they are conceding that this judge, this superior court judge erred on at least one of those five claims. So the presumption of correctness, the presumption that he knows the law, he's already demonstrated that he doesn't know the law. And that, as Judge Edelman said, he kind of swept this all away. He overlooked these claims. He didn't realize what he was doing by doing this. He wanted this off the desk quickly. It wasn't his case to begin with. He just wanted to dispense with it. And let's say we have de novo review here, under de novo review. Let's examine this under de novo review. Okay, sure. Apparently, the additional discovery came up with three documents that are at issue here as to whether or not that would make the difference in terms of that. And I think your sworn or your unsworn statements about Ms. Chase. I guess my questions for you are what burden does your client face in showing that he was prejudiced, and how do these three documents satisfy that burden? Well, I'm glad you asked that, because there was a comment on the other side that we don't know that they occurred. And as Judge Kaczynski said, we don't even have to show that these were admissible, only that they would lead to admissible evidence or that they would be grounds for cross-examination. The three documents we're talking about are a Sacramento County Sheriff's Department report that she was involuntarily committed under 5150 of the Welfare and Institutions Code as a danger to herself after she attempted to commit suicide because of job problems and husband problems, the same situation we have here. When was that, though? What's the date of that? It's approximately 10 years before this action here. So 10 years, this action that occurred with her 10 years ago, you think? That particular one, yes. Okay. Would be relevant to this? To her mental state, yes. It would be relevant. Ten years later? The more recent one, Mr. Boutte asked his attorney to investigate her record of employment at Beale Air Force Base. In his memo to counsel, he said she was suspended for her job because of a threat in which she was overheard by a superior saying, we ought to blow this effing base up. Another of the documents, we secured her personnel file from Beale Air Force Base. A document in that file shows that in February of 2001, How long before this incident? That's about 17 months, less than a year and a half. Less than a year and a half, she was suspended before the events that took place here. She was suspended for her job for improper language and unprofessional conduct, which is consistent with what Mr. Boutte told his counsel she had said. Consistent in what he had said? What do you mean? He made the comment that she was suspended from her job, and that memo is one of our exhibits in the initial federal petition. He made the comment that you need to investigate her personnel record at Beale Air Force Base because she was suspended on or about July 1, 1999, for the comment that I've previously stated. She was, in fact, suspended from her job seven months later, which is consistent with having made that comment on July 1, 1999. Additional records that we secured showed that at the time of his trial, at the very time of his trial, she was under pressure to submit to a security investigation, which she refused to submit to and thus was terminated. What are the three documents? You've given me two. I've given you two of them. The third one was another Sacramento County Sheriff's Department report showing that her 18-year-old daughter who was living with her had filed a complaint that she had beaten her up in their home. They claimed that she had beaten her up in their home. But that same document then says that the young girl retracted or said that that didn't happen. Did I read that right? She did not retract it. I thought there was something. It did not proceed. Okay. No charges were filed. Okay. And how long ago was that incident from this, from the rat? The rat, again, was in the fairly distant past. Okay. More to the point is if trial counsel had bothered to investigate, they found eight years after the fact we found these documents. But didn't it come out at trial that the victim here had some mental health issues or challenges in the past that she had battled depression? I mean, I'm trying to figure out. Depression was it. She was taking medication for depression. They were not allowed to say what the medications she was taking were, one of which is one of the uses is for schizophrenia. They were not allowed. There was an in limiting pretrial order saying you cannot mention the drugs specifically, what she was taking. So they were precluded from going fully into that evidence. Because? Because they had no evidence. They had no evidence beyond that she was depressed. Well, if they had investigated, they would have found that she had been psychiatrically committed. So is your argument that that would have made her claims that the sex was not consensual less credible? Yes. Is that your argument? Yes. Her argument was not contemporaneous. Her argument was made several weeks later after talking to a victim's advocate and she comes up with the statement that the sex was non-consensual. People don't talk like that. At the time of the alleged offense, she talked to a Yuma County Sheriff's deputy and she talked to the emergency room at the hospital. She told them her boyfriend beat her up. That's what she said. She mentioned nothing about the sex according to their reports. So the fact that three weeks later she decides, oh, the sex was non-consensual, that doesn't mean that it, in fact, was. It requires a mental state at the time, not three weeks later. And this was a close call. The jury asked for a readback of the evidence. The jury did not convict him on one of the charges, which was spouse abuse. So as Judge Kaczynski points out, they didn't believe her totally. So her testimony was already in doubt. But wouldn't these additional documents be nothing more than cumulative? As Judge Kaczynski points out, she could have been impeached on her credibility, on her mental stability. But weren't there efforts to impeach her credibility in the trial? There were efforts, but based on no evidence. And as I point out, they were precluded from even asking about those medications because they had no evidence to support any further inquiry. Counsel, what about the additional evidentiary exhibits that were presented to Judge Kaczynski? Are those properly before the district court? Yes, they are. What about Cullen v. Pinholster? Cullen versus – well, that Cullen v. Pinholster is only going to apply if we don't have de novo review here. If this was properly decided on the merits, but it was not. Our position is that it was not properly decided on the merits. Very well. Anything further? No. Thank you, counsel. Mr. Johnson, you have a few seconds left. Use them wisely. And hopefully that's all I'll need. There is a lot of reasons why the district court got this one wrong. But there's one that's insurmountable. And that's the application of the Ilse Doctrine in this case. For it to presume that the state appellate court and the California Supreme Court all completely overlooked all of this in derogation of their duties, completely misapplied, very longstanding, very clear California law and habeas review would be to stand the entire Ilse Doctrine on its head and turn it into a sword to evade ADPA review when it was designed just to be the opposite, a shield for the state to defend against claims that were legitimately procedurally barred. Very well. Thank you, counsel. Thank you so much. The case just argued will be submitted for decision.
judges: Adelman, O'scannlain, Murguia